## Frisbee's Appeal.    Frisbee *versus* Irvin et. al.

A court of equity has no jurisdiction of a bill for an account of profits brought by one, out of possession, who claims to be a joint owner of an oil well against his alleged co-tenants, until the question of title is first determined in a court of law.

November 18th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.    WOODWARD, J., absent.

Appeal from the Court of Common Pleas of *Butler county :* Of October and November Term 1876, No. 187.    In Equity.

This was a bill in equity filed by J. C. Frisbee, which, in substance, set forth, that on May 6th 1873, John Hemphill owned in fee seventy-five acres of land in Butler county, which on that day he conveyed by deed of general warranty to J. C. McKinney ; that on June 25th 1873, McKinney, by articles of agreement, leased a portion of said tract to D. C. Scott ; that on August 13th 1873, Scott, by articles of agreement, sold to Frisbee one-fourth interest in said lease, with an oil-well and fixtures thereon, of which one-fourth complainant took possession, enjoying the profits thereof until October 28th 1874 ; that upon that day the interest of Scott in the well and lease aforesaid was sold at sheriff's sale, and purchased by the defendants, R. L. Irvin and Samuel P., Alexander and ——— Brown, partners as Brown Brothers & Irvin ; that previous to and at the time of sale complainant gave notice that he owned the one-fourth of said well and lease ; that shortly after complainant went into possession of his fourth interest in 1873, the oil commenced to flow at the rate of about two hundred and fifty barrels per day, and continued to produce largely until the day of the sheriff's sale, at which date said well was producing fifty or more barrels daily, and continued to produce at the same rate until the filing of the bill ; that at the time of the sheriff's sale complainant held his undivided one-fourth interest in said well, and is entitled to his share of the oil therefrom ; that defendants refused to recognise complainant as part owner of said leasehold and oil-well, and unjustly deprived him of his share of the oil ; that complainant has always been willing to contribute to the expenses of running said well, but defendants gave him no notice of what would be required, and refused to recognise his title to contribute; and that defendants have not accounted for complainant's share of the oil, and refuse to account.    The bill then prayed that defendants should be required to account to complainant for one-fourth of the oil produced ; that they be restrained from receiving this one-fourth of said oil, or from making any sale of oil that would affect complainant's rights.

The defendants answered, admitting that a sale was made by Scott to Frisbee, but claiming that the interest thus sold was reconveyed to Scott by Frisbee some time during the spring of 1874,

probably during the month of April; denying that Frisbee had possession of said lease or well, and received the profit accruing therefrom up to October 28th 1874, as alleged, but admitting that said Frisbee may have received his portion of the said profits up to the time that the interest was resold to said Scott; averring that the interest of Scott was sold at sheriff's sale on the 28th of October 1874, upon a judgment of R. L. Irvin, Samuel Q. Brown, partners as Samuel Q. Brown & Irvin, and not by the parties whose names are recited in this bill, and that the interest of Scott in said property was purchased at said sale by Samuel Q. Brown and R. L. Irvin, partners as Samuel Q. Brown & Irvin, who answer the plaintiff's bill and claim to be the legal and rightful owners of said interest and of the working interest in said well, lease, machinery, fixtures, &c.; that no notice of claim of said Frisbee in said property was given to defendants prior to said day of sale, as alleged. Defendants do not know what the daily production of said well was prior to said sale, but that since that time it has not averaged above twenty-five barrels per day, and that the well aforesaid has been diligently worked; that the production of said well prior to said sale can be readily ascertained from the books of the pipe companies; that complainant, at the time of the sheriff's sale, did not own an interest in said leasehold and oil-well, and that defendants did not unjustly deprive complainant of his share therein, as they did not recognise him as the owner thereof, and therefore did not give him notice in regard to the expenses or account for the proceeds of the well. The bill and answer were referred to a master to take testimony and report, and before any testimony was taken, the defendant's counsel requested the master to report to the court without taking any testimony, recommending a dismissal of the plaintiff's bill for want of jurisdiction. The motion was argued at a time fixed by the master. The defendants, in their pleadings, did not plead to the jurisdiction, but answered the bill. The master reported that while it was not too late to plead to the jurisdiction of the court, yet he was of the opinion that it was not within his province to pass upon the question.

After the testimony was taken and the same reviewed, the master made a further report, recommending a decree that the defendants account for the one-fourth of the oil produced, and that they should be restrained from receiving one-fourth of the production thereafter.

The defendants filed a number of exceptions to the report of the master, the first being as follows:

"That a dismissal of the plaintiff's bill should have been recommended in his report, on the ground that sufficient reasons or grievances are not alleged and set forth in said bill to give a court of equity jurisdiction, the chief question raised by the bill being one of title, which question should have been settled by ejectment at law

7 Norris—10

[Frisbee's Appeal.]

and not in equity. To sustain such bill, answered as it has been, would be to interfere with the right of trial by jury."

The master overruled the exceptions, but the court sustained them and dismissed the plaintiff's bill, with costs. From this decree, this appeal was taken.

*McCandless & Greer*, for plaintiff in error.—This suit was not in the nature of a suit in ejectment, but in the nature of a suit for an account in which it was perfectly proper for us to invoke relief. We claim that wherever account render would lie, there a bill in equity for an account will lie : Shriver *v.* Nimick, 5 Wright 80 ; Perch *v.* Quiggle, 7 P. F. Smith 247.

*McJunkin & Campbell*, for appellees.—The controversy in this case involves a question of title, and for a court of equity to undertake to determine a disputed question of title, dependent upon contradictory proof, would certainly be a proceeding without precedent.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 6th 1879.

It is unquestionably true that the Courts of Common Pleas, by the Act of October 13th 1840, Pamph. L. 7, have all the powers and jurisdiction of courts of chancery, in settling partnership accounts, and such other accounts and claims as by the common law and usages of this Commonwealth have heretofore been settled by account-render. These words are broad enough to include accounts between tenants in common, though this remedy was first given to them by statute 4 Ann., c. 16, sect. 27, reported by the judges to be in force in this state : 3 Binn. 625. It seems, however, very well settled that account will not lie against a disseisor or other wrongdoer. To maintain an action of account, said Lord Coke, before the statute, there must be either a privity in deed by the consent of the party, for against a disseisor or other wrongdoer no account doth lie, or a privity in law *ex provisione legis*, made by the law as against a guardian : Co. Litt. 172 a. So if a joint tenant takes all the profits to his own use, account will not lie : 1 Rol. 117, 1. 30. At common law indeed no action of account lay by one tenant in common against another, unless the latter had been specially constituted the bailiff of the other : Co. Litt. 172 a. This the statute was intended to remedy : 2 Bl. Com. 194. Yet there is nothing which would seem to change the well-settled rule, that one out of possession has no right to an account against the tenant holding adversely, whether the plaintiff claim the whole or a part. Such an action is not the proper action for trying title. The same principle has been recognised in equity. In Tilly *v.* Bridges, Prec. Ch. 252, it was held, that when one has title to the possession of land, and makes an entry whereby he becomes entitled to recover

[Frisbee's Appeal.]

damages at law for the time the possession was detained from him after such entry, he shall not turn that suit at law into a suit of equity and bring a bill for an account of the profits, except in case of an infant or some very particular circumstances." So in Norton *v.* Frecker, 1 Atk. 524, Lord Hardwicke said : " The proceedings in equity are the same as at law where trespass will not lie for mesne profits till the possession is recovered by ejectment." So in Sayer *v.* Pierce, 1 Ves. Sr. 232, where an account of the profits of coal-mines was not decreed, but the bill was retained with liberty to bring ejectment, but that was because there was a prayer to ascertain boundaries, and the plaintiff, if he recovered in ejectment, might want that relief. See also 1 Story's Eq. Jur., § 511. The question, however, has been put at rest in this state by the North Pennsylvania Coal Co. *v.* Snowden, 6 Wright 488, where it was held, that a court of equity has no jurisdiction of a bill brought by one tenant in common against an alleged co-tenant to obtain the possession and enjoyment of mining rights and privileges, founded on legal title, until those rights have been established at law. "It has never been held," says Mr. Justice STRONG, "that equity courts have jurisdiction of actions, founded on legal title, brought by one tenant in common against an alleged co-tenant to obtain possession or enjoyment of land." See also Norris's Appeal, 14 P. F. Smith 275; Tillmes *v.* Marsh, 17 Id. 507; Christie & Scott's Appeal, 4 Norris 465. That there was in this case an ouster of the plaintiff by the defendants, on the 28th day of October 1874, by the sheriff's sale on that day, is substantially admitted by the bill. Certain it is that the plaintiff deemed it necessary then to give notice of his claim. Since then the defendants have refused to recognise his title; he so alleges in his bill. We think, in every view of the case, the decree of the court below was right.

Decree affirmed, and appeal dismissed at the costs of the appellant.